IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>R & R CHINCHILLA, INC., and JAMES FRANKLIN RITTERSPACH,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 3:26-cv-01990<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, United States of America, by authority of the Attorney General of the United States and through its undersigned attorneys, files this Complaint and alleges as follows:

**INTRODUCTION**

1. This is a civil action against R & R Chinchilla, Inc. and James Franklin Ritterspach ("Defendants") for violations of the Animal Welfare Act ("AWA") and its implementing regulations and standards.

2. Congress enacted the AWA for a number of purposes, including to ensure that animals used for breeding or held for sale are provided humane care and treatment. 7 U.S.C. § 2131. The AWA imposes "minimum requirements" for handling, housing, feeding, watering, sanitation, and adequate veterinary care, among other requirements. *Id.* § 2143(a)(2)(A).

3. R & R Chinchilla, also known as Ritterspach Chinchilla Ranch, is a chinchilla (*Chinchilla lanigera*) breeding and supply business located in Jenera, Ohio. Chinchillas are bred on the property, sold online, and then generally delivered to the purchaser via a third-party transporter. Mr. Ritterspach is the President and sole owner and operator of R & R Chinchilla.

4. R & R Chinchilla holds a class "B" dealer license issued by the United States Department of Agriculture ("USDA").

5. Acting as a dealer of animals requires R & R Chinchilla to hold an AWA dealer license and to comply fully with all requirements in the AWA and its regulations and standards for the humane care, handling, and treatment of all animals present at the facility. R & R Chinchilla is also bound to maintain all legally required records and can only possess up to the maximum number of animals allowed by its license.

6. Since September 2022, USDA has conducted eighteen inspections of R & R Chinchilla's facility. Almost every inspection identified multiple violations of the AWA and its regulations and standards, for a total of 59 AWA violations in less than four years. Seventeen of these violations were classified as critical or direct, the two most serious types of AWA citation, and fifteen of the critical or direct violations occurred within the past year. R & R Chinchilla has not only accrued a shocking number of violations, but has been cited for the same type of violations repeatedly.

7. For fifteen of these inspections, up through August 2026, R & R Chinchilla, through Mr. Ritterspach, falsely represented to USDA that it had between 300 to 450 animals at its facility. In reality, Mr. Ritterspach had been concealing around 800 more animals in a separate building for years to avoid USDA oversight of those animals. When USDA inspectors gained access to inspect this previously undisclosed building on August 5, 2026, they found hundreds of animals

in dire conditions. *See* photo below.



Ex. 1 (August 5, 2026 Routine Inspection Report) at 13.

8. Defendants' violations of the AWA and its regulations and standards include failing to provide veterinary care to animals with eyes so swollen and oozing with discharge that they cannot open them (*see* photo below); allowing fecal material to cover the entire floor of hundreds of enclosures; having ammonia levels so high it caused USDA inspectors to cough to the point of having to leave the building; ripping a four-by-six-inch mat of hair off a chinchilla while holding the animal by the tail; allowing a metal collar to become embedded in the neck of an animal; and keeping open packets of rat poison right next to enclosures housing chinchillas.



Ex. 2 (August 11, 2026 Inspection Report) at 10.

9. Despite numerous opportunities to correct its unlawful behavior, Defendants have been unable or unwilling to come into compliance with the AWA, showing a disregard for the applicable laws and the well-being of the animals at its facility.

10. Defendants' pattern of behavior and failure to correct the practices underlying their repeat violations has placed, and is continuing to place, the health of the animals housed in R & R Chinchilla's facility in serious danger. Without an immediate injunction, the animals will almost certainly continue to endure the inhumane conditions observed during past inspections and be in serious danger.

11. The only way to ensure compliance and the safety and well-being of the animals at R & R Chinchilla is through declaratory and injunctive relief.

**JURISDICTION AND VENUE**

12. The Court has jurisdiction over this action pursuant to 7 U.S.C. § 2146(c) (actions

arising under the AWA); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1345 (United States as plaintiff).

13. Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391 and 7 U.S.C. § 2159(a), because Mr. Ritterspach resides in this judicial district, R & R Chinchilla is incorporated and does business in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in Hancock County, Ohio, within this judicial district.

14. The Court may grant the requested relief under the AWA, 7 U.S.C. §§ 2146(c) and 2159, and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

**THE PARTIES**

15. The Plaintiff is the United States of America. Authority to bring this action is vested in the Attorney General of the United States pursuant to 28 U.S.C. §§ 516 and 519 and 7 U.S.C. §§ 2146(c) and 2159.

16. Defendant R & R Chinchilla is a for-profit corporation incorporated in the State of Ohio. R & R Chinchilla operates in Jenera, Ohio, and breeds, buys, and sells chinchillas. As required to obtain and sell AWA-regulated animals in commerce, R & R Chinchilla holds a class "B" dealer license from USDA.

17. R & R Chinchilla is a "person" as defined in 9 C.F.R. § 1.1 because it is a corporation or other legal entity.

18. Defendant James Franklin Ritterspach resides in Jenera, Ohio and is the President and sole owner and operator of R & R Chinchilla, Inc.

**LEGAL BACKGROUND**

19. The AWA establishes minimum standards of care and treatment to be provided for certain animals bred and sold for use as pets, used in biomedical research, transported

commercially, or exhibited to the public. *See generally* 7 U.S.C. § 2131 *et seq*. It was enacted to "insure that animals intended . . . for exhibition purposes or for use as pets are provided humane care and treatment" and "to assure the humane treatment of animals during transportation in commerce. . . ." *Id.* § 2131(1), (2).

20. The AWA is administered by the Secretary of Agriculture ("the Secretary") or his representative. 7 U.S.C. §§ 2132(b), 2146. The AWA authorizes the Secretary to "promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of [the AWA]." 7 U.S.C. § 2151. The Secretary has delegated her authority to the Administrator of USDA's Animal and Plant Health Inspection Service ("APHIS"). APHIS's Animal Care inspectors—who generally have veterinary or other animal care experience—conduct inspections of facilities to determine compliance with the AWA and its implementing regulations.

21. The AWA defines a "dealer" as "any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet . . . ." 7 U.S.C. § 2132(f); *see also* 9 C.F.R. § 1.1 (definition of dealer).

22. The AWA defines the term "animal" to mean "any live or dead dog, cat, monkey (nonhuman primate mammal), guinea pig, hamster, rabbit, or such other warm-blooded animal, as the Secretary may determine is being used, or is intended for use, for research, testing, experimentation, or exhibition purposes, or as a pet," but excludes certain categories not relevant here. 7 U.S.C. § 2132(g). Chinchillas fall within the AWA's definition of "animal."

23. Anyone who falls within the statutory definition of a dealer must obtain and maintain a valid license from the Secretary. 7 U.S.C. § 2134; *see also* 9 C.F.R. § 2.1(a)(1) ("No person shall operate as a dealer . . . without a valid license . . . .").

24. A class "B" licensee is defined as a person "meeting the definition of a dealer . . . and whose business includes the purchase and/or resale of any animal." 9 C.F.R. § 1.1 (definition of class "B" licensee).

25. The Secretary shall issue a license to a dealer upon application, provided that no such license shall be issued until the dealer has demonstrated that his facilities comply with the standards promulgated by the Secretary pursuant to 7 U.S.C. § 2133.

26. By signing the application form, the applicant acknowledges that they have reviewed the AWA and its regulations and standards and "agrees to comply with them." 9 C.F.R. § 2.2.

27. Each dealer must comply in all respects with the regulations and standards for the humane handling, care, treatment, and housing of animals. *Id*. § 2.100(a); *see also id*. § 2.2.

28. The AWA makes it unlawful for any dealer to knowingly violate the AWA. 7 U.S.C. § 2149(d).

29. The Secretary has authority to promulgate regulations and standards to govern the humane handling, care, and treatment by dealers, which include the minimum requirements for handling, housing, feeding, watering, sanitation, ventilation, and adequate veterinary care. 7 U.S.C. § 2143(a)(1), (a)(2)(A). The AWA makes clear that this power extends to "humane standards and recordkeeping requirements governing the purchase, handling, or sale of animals, in commerce, by dealers." *Id.* § 2142.

30. No person shall operate as a dealer without a valid license. 9 C.F.R. § 2.1(a)(1). Licenses authorize increments of 50 animals on hand at any single point in time during the period of licensure. *Id*. § 2.1(b)(2)(i). A licensee must obtain a new license before any change resulting in more than the authorized number of animals on hand at any single point in time during the

period of licensure. *Id*.

31. Dealer facilities must be constructed of such material and of such strength as appropriate for the animals involved. *Id.* § 3.125(a). Indoor housing facilities must be structurally sound and maintained in good repair to protect the animals from injury and to contain the animals. *Id.* A dealer must provide for the removal and disposal of animal and food waste, bedding, dead animals, trash and debris. *Id.* § 3.125(d). The dealer must also provide and operate disposal facilities to minimize vermin infestation, odors, and disease hazards. *Id*.

32. Dealers must provide indoor housing facilities that are adequately ventilated by natural or mechanical means to provide for the health and to prevent discomfort of the animals at all times. *Id*. § 3.126(b). The indoor facilities must be provided with fresh air using windows, doors, vents, fans, or air-conditioning and shall be ventilated to minimize drafts, odors, and moisture condensation. *Id*.

33. Dealers must ensure that the food they provide is wholesome, palatable, and free from contamination and of sufficient quantity and nutritive value to maintain all animals in good health. *Id*. § 3.129(a). Food, and food receptacles, shall be sufficient in quantity and located so as to be accessible to all animals in the enclosure and shall be placed so as to minimize contamination. *Id*. § 3.129(b). Food receptacles shall be kept clean and sanitary at all times. *Id*. If self-feeders are used, adequate measures shall be taken to prevent molding, contamination, and deterioration or caking of food. *Id*.

34. Dealers must ensure that, if potable water is not accessible to the animals at all times, it be provided as often as necessary for the health and comfort of the animal. *Id*. § 3.130. All water receptacles shall be kept clean and sanitary. *Id*.

35. Dealers must ensure that excreta be removed from primary enclosures as often as

necessary to prevent contamination of the animals contained therein and to minimize disease hazards and to reduce odors. *Id*. § 3.131(a). Premises (buildings and grounds) shall be kept clean and in good repair to protect the animals from injury and to facilitate prescribed husbandry practices. *Id*. § 3.131(c). Accumulations of trash shall be placed in designated areas and cleared as necessary to protect the health of the animals. *Id*. A safe and effective program for the control of insects, ectoparasites, and avian and mammalian pests shall be established and maintained. *Id*. § 3.131(d).

36. Dealers shall ensure that a sufficient number of adequately trained employees be utilized to maintain a professionally acceptable level of husbandry practices. *Id*. § 3.132. Such practices shall be under a supervisor who has a background in animal care. *Id*.

37. Dealers shall ensure that the handling of all animals be done as expeditiously and carefully as possible in a manner that does not cause trauma, overheating, excessive cooling, behavioral stress, physical harm, or unnecessary discomfort. *Id*. § 2.131(b)(1).

38. Animals housed in the same primary enclosure must be compatible, and animals must not be housed near animals that interfere with their health or cause them discomfort. *Id.* § 3.133.

39. Every dealer shall make, keep, and maintain records or forms which fully and correctly disclose the following information concerning animals purchased or otherwise acquired, owned, held, leased, or otherwise in his or her possession or under his or her control, or which are transported, sold, euthanized, or otherwise disposed of by that dealer or exhibitor:

a. The name and address of the person from whom the animals were purchased or otherwise acquired;

b. The USDA license or registration number of the person if he or she is licensed or registered under the Act;

c. The vehicle license number and State, and the driver's license number (or

photographic identification card for nondrivers issued by a State) and State of the person, if he or she is not licensed or registered under the Act;

d. The name and address of the person to whom an animal was sold or given;

e. The date of purchase, acquisition, sale, or disposal of the animal(s);

f. The species of the animal(s); and

g. The number of animals in the shipment.

7 U.S.C. § 2140; 9 C.F.R. § 2.75(b)(1). The records shall include any offspring born of any animal while in the dealer's possession or under the dealer's control, to the extent that any identification or counting of offspring can be carried out without unduly disturbing nesting or rearing activities. 9 C.F.R. § 2.75(b)(1).

40. Additionally, "the use of a room, table, or other facilities necessary for the proper examination of the records and inspection of the property or animals must be extended to APHIS officials by the dealer [or] exhibitor . . . , and a responsible adult shall be made available to accompany APHIS officials during the inspection process." *Id.* § 2.126(b).

41. Each dealer must have an "attending veterinarian who shall provide adequate veterinary care to its animals." *Id*. § 2.40(a). The attending veterinarian must be employed under formal arrangements. *Id.* § 2.40(a)(1). The dealer must ensure that "the attending veterinarian has appropriate authority to ensure the provision of adequate veterinary care and to oversee the adequacy of other aspects of animal care and use." *Id.* § 2.40(a)(2). Each dealer shall establish and maintain programs of adequate veterinary care, including "[t]he use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries" and daily observations of all animals to assess their health and well-being. *Id.* § 2.40(b)(2), (3). Daily observations can be conducted by someone other than the attending veterinarian, so long as "timely and accurate information on problems of animal health, behavior, and well-being is conveyed to the attending veterinarian." *Id.*

§ 2.40(b)(3).

42. The AWA requires the Secretary to make investigations and inspections as necessary to determine whether any dealer has violated any provision of the AWA, or any regulation or standard issued thereunder. 7 U.S.C. § 2146(a). The AWA requires that "the Secretary shall, at all reasonable times, have access to the places of business and the facilities, animals, and those records required to be kept pursuant to section 2140 of this title of any . . . dealer." *Id.*

43. Under the AWA, United States district courts are authorized to issue a temporary restraining order or injunction upon a showing that any dealer, carrier, exhibitor, or intermediate handler is dealing in stolen animals, or is placing the health of any animal in serious danger in violation of the AWA or its implementing regulations or standards promulgated thereunder. 7 U.S.C. § 2159(a), (b).

44. Under the AWA, United States district courts "are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of [the AWA], and shall have jurisdiction in all other kinds of cases arising under [the AWA]," except in one instance not applicable here. 7 U.S.C. § 2146(c).

**FACTUAL BACKGROUND**

45. At all times relevant to the allegations in this complaint, Defendant R & R Chinchilla was a dealer as that term is defined in the AWA and its implementing regulations and held USDA license number 31-B-0195.

46. R & R Chinchilla operates at a facility located at 7754 State Route 103, Jenera, Ohio, in Hancock County.

47. At all times relevant to the allegations in this complaint, Defendant R & R Chinchilla was a for-profit corporation registered in the State of Ohio.

48. R & R Chinchilla has held a USDA dealer license for several decades. It originally held a class "A" license for breeders, but changed to a class "B" license for brokers in 2003. Up through 2018, R & R Chinchilla disclosed to APHIS that it had over 1,000 animals on its property. In 2019, the number of disclosed animals dropped to between 600 and 800, and from 2021 to June 2026, the number of animals on Defendants' property that it disclosed to APHIS inspectors was around 300 to 450.

49. R & R Chinchilla's most recent AWA class "B" license was issued in 2025. In February 2025, Mr. Ritterspach submitted the license application identifying himself as the President of R & R Chinchilla. For the "maximum number of animals owned, held, maintained, sold, exhibited, or leased at any one time during the period of licensure," Mr. Ritterspach listed 800 animals.

50. By signing the application forms, Mr. Ritterspach acknowledged that he had reviewed the AWA and its implementing regulations and standards and agreed that Defendant R & R Chinchilla would comply with them. *See* 9 C.F.R. § 2.2.

51. Since September 2022, USDA has found numerous violations of the AWA and its regulations and standards at almost every inspection of R & R Chinchilla's facility, totaling almost 60 AWA violations. Many of these AWA violations were "repeat" noncompliant items, meaning that USDA cited R & R Chinchilla for the same noncompliant item either during the previous inspection or at least three times within the past three years. *See* USDA Animal Welfare Inspection Guide ("Inspection Guide") at 2-7 (June 2025), https://www.aphis.usda.gov/sites/default/files/animal-welfare-inspection-guide.pdf. Seventeen of the violations identified since September 2022—including fifteen in the past year—were classified as either "critical" or "direct," the two most serious types of AWA citation. A "critical"

noncompliance is one that has a "serious or severe adverse effect on the health and well-being of the animal[s]" or falls into certain other categories, such as interfering with an APHIS official in the course of carrying out his or her duties. *Id.* at 2-8, 2-9. A "direct" noncompliance is a critical noncompliance that is having a serious or severe adverse effect on the health and well-being of an animal at the time of the inspection. *Id.* at 2-9.

52. APHIS inspectors conducted an inspection[1] of 403 animals at R & R Chinchilla's facility on September 13, 2022. During this inspection, the inspectors cited violations of four different AWA regulations and standards. Ex. 3 (September 13, 2022 Inspection Report).

53. APHIS inspectors next conducted an inspection of 431 animals on January 23, 2023. Inspectors identified two repeat noncompliant items. Ex. 4 (January 23, 2023 Inspection Report).

54. On October 25, 2023, APHIS inspectors conducted another inspection, this time of 367 animals. Inspectors identified violations of six AWA regulations and standards, including two direct citations, two repeat noncompliant items, and two other violations. Ex. 5 (October 25, 2023 Routine Inspection Report); Ex. 6 (October 25, 2023 Focused Inspection Report).

55. APHIS inspectors returned to R & R Chinchilla's facility around two weeks later on November 7, 2023, and identified another repeat non-compliant item. Ex. 7 (November 7, 2023 Inspection Report).

56. On March 7, 2024, USDA sent an Official Warning to R & R Chinchilla based on

[1] Many of the inspections conducted at this facility are considered "focused" inspections. A "focused" inspection may include: re-inspection for "direct" noncompliances identified during a previous inspection, re-inspection for a specific noncompliance identified during a previous inspection, a partial inspection of the facility, such as animals only or records only, or a partial inspection to follow up on a public complaint concerning animal welfare. *See* Inspection Guide at 3-27.

the direct citations from the October 25, 2023 inspection.

57. APHIS inspectors again identified a repeat non-compliant item during an inspection of 353 animals on June 12, 2024. Ex. 8 (June 12, 2024 Inspection Report).

58. On March 6, 2025, APHIS inspectors conducted an announced re-licensing inspection of 369 animals. R & R Chinchilla did not receive a citation during this inspection. Ex. 9 (March 6, 2025 Inspection Report). At the conclusion of their inspection, APHIS inspectors asked if all animals had been seen, and Mr. Ritterspach stated that APHIS inspectors had seen all animals at the facility.

59. On September 10, 2025, APHIS inspectors returned to conduct an unannounced inspection of 364 animals and identified three non-compliant items, including a direct citation, a repeat citation, and another violation. Ex. 10 (September 10, 2025 Routine Inspection Report); Ex. 11 (September 10, 2025 Focused Inspection Report).

60. When APHIS inspectors returned to R & R Chinchilla's facility twelve days later, they were unable to inspect because a responsible adult was not available to accompany them. Ex. 12 (September 22, 2025 Inspection Report).

61. Two months later, APHIS inspectors again attempted to inspect the facility, but—again—could not because a responsible adult was not available to accompany them. Ex. 13 (November 17, 2025 Inspection Report).

62. On January 21, 2026, APHIS inspectors finally gained access to inspect 363 animals at the R & R Chinchilla facility and identified four different violations of the AWA's standards, including one direct citation, a repeat citation, and two other non-compliant items. Ex. 14 (January 21, 2026 Inspection Report).

63. APHIS inspectors returned around two weeks later and cited R & R Chinchilla for

two direct non-compliant items, one of which was a repeat direct citation. Ex. 15 (February 3, 2026 Inspection Report). When APHIS inspectors re-inspected the facility the next week, R & R Chinchilla had corrected the two direct non-compliant items. Ex. 16 (February 9, 2026 Inspection Report).

64. At the end of February 2026, APHIS inspectors conducted another inspection of R & R Chinchilla's facility and 347 animals and cited yet another non-compliant item. Ex. 17 (February 25, 2026 Inspection Report).

65. On February 13, 2026, USDA issued a 21-day suspension of Defendant R & R Chinchilla's AWA class "B" license based on R & R Chinchilla's cumulative violations of the AWA's regulations and standards between September 10, 2025, and February 3, 2026. R & R Chinchilla was served with the 21-day suspension on March 2, 2026.

66. APHIS inspectors returned to the facility on June 9, 2026, and cited R & R Chinchilla for violating eight different AWA regulations and standards. Three of those citations were direct non-compliant items, and one citation was a repeat non-compliant item. APHIS inspectors inspected 331 animals at the facility. Ex. 18 (June 9, 2026 Routine Inspection Report); Ex. 19 (June 9, 2026 Focused Inspection Report).

67. On June 23, 2026, APHIS inspectors conducted another inspection of R & R Chinchilla's facility, including 341 animals, and inspectors cited R & R Chinchilla for a repeat non-compliant item. Ex. 20 (June 23, 2026 Inspection Report).

68. In July 2026, USDA received a tip that R & R Chinchilla had a second building at its facility housing hundreds of previously undisclosed animals.

69. It is USDA's routine practice for inspectors to ask the facility representative during every inspection if there are any other animals that the inspector has not seen. *See* Inspection Guide

at 3-7. Pursuant to this policy, APHIS inspectors asked Mr. Ritterspach if there were any other animals that the inspectors had not seen during each inspection conducted from 2021 to June 2026. At each inspection, Mr. Ritterspach stated there were no additional animals.

70. On August 5, 2026, APHIS inspectors conducted an inspection of R & R Chinchilla's facility. Upon questioning, Mr. Ritterspach disclosed there was a second building on the property with regulated animals. APHIS inspectors counted approximately 1,147 total animals between both buildings during the inspection. APHIS inspectors cited R & R Chinchilla for violating ten different AWA regulations and standards, including one repeat direct citation, one direct citation, two critical citations, and four repeat non-compliant items. Ex. 1; Ex. 21 (August 5, 2026 Focused Inspection Report).

71. APHIS inspectors returned to R & R Chinchilla's facility on August 7, 2026, and cited R & R Chinchilla for seven violations of the AWA's regulations and standards, including three direct citations—two of which were repeat citations—and four other repeat non-compliant items. Ex. 22 (August 7, 2026 Inspection Report).

72. On August 11, 2026, APHIS inspectors conducted another inspection of R & R Chinchilla's facility and cited R & R Chinchilla for seven violations of the AWA's regulations and standards, including a repeat direct citation and six other repeat non-compliant items. Ex. 2.

73. USDA issued a 21-day suspension of R & R Chinchilla's license on August 14, 2026, and it was served on R & R Chinchilla on August 15, 2026. The suspension will be lifted under its own terms on September 6, 2026.

74. USDA intends to file an administrative complaint regarding R & R Chinchilla imminently.

75. After every inspection, the inspectors conduct an exit interview with the facility

representative and explain what they are being cited for and how to correct it. At times, the inspectors provide reference materials or other assistance in achieving compliance. The inspection reports also explain each citation and what the licensee's obligations are with respect to each violated provision.

### I. Defendants Have Violated the AWA and Its Regulations and Standards and Placed the Health of Their Animals in "Serious Danger" by Not Providing Enough Adequately Trained Employees to Appropriately Care for the Number of Animals at the Facility.

76. R & R Chinchilla has received multiple citations for not having enough adequately trained employees to appropriately care for its animals in violation of 9 C.F.R. §§ 2.1(b)(2)(i), 2.131(b)(1), 3.132, 3.133. For years, Mr. Ritterspach was the person that cared for R & R Chinchilla's animals, and Mr. Ritterspach repeatedly lied to APHIS inspectors regarding the number of animals at the facility and has engaged in questionable husbandry, handling, and care practices. After receiving a citation earlier this year for not having enough employees, an additional person began assisting Mr. Ritterspach, but the conditions at Defendants' facility demonstrate the inadequacy of their employees' ability to maintain acceptable levels of care for the more than 1,000 animals at the facility.

77. During the October 25, 2023 inspection, APHIS inspectors observed an adult male chinchilla and an adult female chinchilla housed together for breeding in a one-foot-by-one-foot enclosure with no visual barriers or nest boxes that would allow the animals to escape one another. One chinchilla was missing a one-inch-by-one-inch patch of hair on its back, and the other chinchilla was nearly bald from the middle of its body through the bottom inch of its tail. Mr. Ritterspach had failed to separate these animals even though they were harming themselves and/or each other. Ex. 5 at 1; *see* 9 C.F.R. § 3.133.

78. During the February 3, 2026 inspection, APHIS inspectors observed that R & R

Chinchilla again only had one full-time person responsible for the care of its animals, which was not enough to carry out the husbandry practices and care required by the AWA for the 363 animals APHIS was aware of at that time. Ex. 15 at 1; *see* 9 C.F.R. § 3.132.

79. During the June 9, 2026 inspection, APHIS inspectors instructed Mr. Ritterspach to remove an animal with a large amount of excessive matting from her enclosure. Mr. Ritterspach removed the animal and investigated the matting. He then placed the animal over his knee and restrained her using her tail and slowly peeled the matting from her fur and skin. The chinchilla attempted to escape while hanging by her tail, kicking and trying to bite Mr. Ritterspach. Ex. 18 at 1-2; *see* 9 C.F.R. § 2.131(b)(1).

80. During the August 5, 2026 inspection, APHIS inspectors discovered that R & R Chinchilla had—for years—kept around 800 additional animals in another building at the facility without disclosing them to APHIS. APHIS inspectors initially observed around 342 chinchillas, consistent with the number of animals observed during previous inspections. When APHIS inspectors asked Mr. Ritterspach if there were other animals, the representative stated there was another building with animals on the property. Mr. Ritterspach also stated that the additional animals had been housed in the previously undisclosed building for years and that he had been told it would never pass inspection. It is APHIS policy for its inspectors to ask if all animals have been seen at the conclusion of all inspections. Mr. Ritterspach did not disclose to APHIS inspectors during inspections that he had animals in a second building for at least five years before the August 5, 2026 inspection. Ex. 1 at 1; *see* 9 C.F.R. § 2.4.

81. Once APHIS inspectors accessed that building, they counted 805 additional chinchillas, for a total of approximately 1,147 animals, exceeding the maximum number of animals allowed under R & R Chinchilla's license (850 animals) by more than a third. Ex. 1 at 1; *see* 9

C.F.R. § 2.1(b)(2)(i).

82. APHIS inspectors also cited R & R Chinchilla for improper handling of animals in the previously undisclosed building. One chinchilla had a thin, metal, disk-shaped collar embedded in its neck, meaning the collar had applied pressure to the skin on the animal's neck so severely and for so long that it penetrated the skin, and the animal's skin began growing over the collar. The skin on both sides of the collar on the animal's throat had matted, dried clumps of brown discharge, and there was excessive visible wetness around the collar with red and green discharge present. The animal's skin pouches on both sides of the collar had hair-loss, and the skin was wet and pink and red. A foul odor came from the animal. Mr. Ritterspach stated he could not remember the last time that the collar was checked. Ex. 22 at 2, 12-16; *see* 9 C.F.R. § 2.131(b)(1); *see* photo below.



Ex. 22 at 15.

83. An AWA license authorizes a maximum number of animals to ensure that the

facility and personnel are capable of providing sufficient care to the regulated animals. *See* 9 C.F.R. § 2.1(b)(2)(i). The severity of the non-compliant items documented during the August 5, 7, and 11, 2026 inspections and the non-compliant items from inspections in the previously known building leading up to the August 5, 2026 inspection described below demonstrate R & R Chinchilla's inability to care for the number of animals in its possession. Ex. 21 at 2-3; *see* 9 C.F.R. § 3.132.

## II. Defendants Have Violated the AWA and Its Regulations and Placed the Health of Their Animals in "Serious Danger" by Failing to Provide Adequate Veterinary Care.

84. Since September 2022, R & R Chinchilla has been cited for failing to provide adequate veterinary care to roughly 40 different animals present at its facility in violation of 9 C.F.R. § 2.40. On several of these occasions, Mr. Ritterspach did not seem to be conducting adequate daily observations of all animals to assess their health and well-being, as required by the veterinary care regulations. *See id.* § 2.40(b)(3).

85. During the October 25, 2023 inspection, APHIS inspectors observed an adult male chinchilla and an adult female chinchilla with excessive hair loss that Defendants had not identified as needing veterinary care. One chinchilla was missing a one-inch-by-one-inch patch of hair on its back, and the other chinchilla was nearly bald from the middle of its body through the bottom inch of its tail. Ex. 6 at 1, 4, 6, 7; *see* 9 C.F.R. § 2.40(b)(2).

86. During the inspection on September 10, 2025, APHIS inspectors observed an adult chinchilla with a red, inflamed eyelid with crusted yellow matting that the animal did not open. The chinchilla's rear was matted with yellow staining in the fur and thinning of the hair on the inside of the back legs, and it had a quarter-sized soft mass with some hair loss and reddening of the skin under its left jaw. Defendants had not identified this animal as needing veterinary care. Ex. 10 at 1, 5; *see* 9 C.F.R. § 2.40(b)(3).

87. During the June 9, 2026 inspection, APHIS inspectors observed four animals requiring veterinary care. Ex. 18 at 1. One chinchilla had excessive matting on her hind end—a thick adhered mat of fur from the back of her legs and base of her tail to the mid-section of her back. *Id.* at 1, 9. The hair had a brown/yellow discoloration and foreign debris. Once removed, the matted ball of fur measured six inches by four inches. Two other female chinchillas also had various degrees of matting. *Id.* at 1, 10, 12. Hair matting can inhibit proper thermoregulation, cause injury or infection, and cause discomfort. Defendants had not identified these animals as requiring veterinary care before the inspection. Another chinchilla had an abnormal hair coat that Mr. Ritterspach represented was a result of hair plucking. *Id.* at 1, 11. This behavior can indicate stress or underlying health conditions. Mr. Ritterspach was aware of this animal's condition but did not report it to the attending veterinarian. *Id.* at 1; *see* 9 C.F.R. § 2.40(b)(3).

88. During the August 5, 2026 inspection, after gaining access to the second building, APHIS inspectors observed twenty animals in need of veterinary care:

- two chinchillas with severe swelling, redness, and discharge around both eyes, causing the eyes to swell shut;
- five chinchillas with swelling and redness around one eye squinting and holding their eye shut;
- two chinchillas with an abnormal eye that has a blue/gray discoloration and a lesion or divot in the center of the eye that is surrounded by a halo of white material, as well as discharge coming from the eye;
- a dark gray chinchilla with a closed right eye with yellow crusted material present and matted fur surrounding the affected eye;
- a white and black chinchilla with yellow/white discharge exuding from its left eye, clumps of matted fur and generalized hair loss, and reddened skin with yellow crusting;
- a light gray chinchilla with marked swelling and redness surrounding the right eye, hair loss around the affected eye, and matting of the fur with yellow crusted material directly below the eye, as well as clumps of matted fur on the hind-end of the animal;
- a dark gray chinchilla, with mild swelling of the tissue around its left eye, squinting;

- a dark gray chinchilla squinting its left eye with severe crusting of the fur surrounding the eye with yellow/brown discharge;
- a gray chinchilla with severe swelling and redness surrounding the right eye and crusting and thick yellow pus-like material exuding from the affected eye;
- a gray chinchilla squinting its left eye with a thick yellow pus-like discharge at the corner of its eye running down onto the fur of the animal's nose;
- a gray chinchilla with a thick yellow discharge exuding from both nostrils and fur wet with clear discharge on its chin and neck;
- a white chinchilla with overgrown bottom incisors that extend up and over to the left of the upper jaw;
- a pink and white chinchilla with generalized matting of fur on the hind-end of the animal with yellow/orange discoloration likely due to urine staining; and
- a dark black and gray chinchilla with generalized matting of fur on its hind end.

APHIS officials instructed Mr. Ritterspach to seek veterinary care for these animals no later than noon on August 6, 2026. Ex. 1 at 2-3, 6-31; *see* 9 C.F.R. § 2.40(b)(2); *see also* photos below.





Ex. 1 at 19, 28.

89. When APHIS inspectors returned to inspect the facility two days later, they discovered that Mr. Ritterspach had not had a veterinarian see the animals identified by APHIS until August 7, 2026, at 11:30am. Ex. 22 at 1. APHIS inspectors also identified seven additional

animals in need of veterinary care that had not been seen. These animals included:

- a gray chinchilla with a thin, metal, disk-shaped collar embedded in its neck;
- a white and gray chinchilla with wounds at the base of and on the tissue of its right ear, which Mr. Ritterspach stated was likely caused by its cage mate;
- a gray chinchilla with a diffuse, bluish-gray tint obscuring most of the globe of its eye and an accumulation of white material in the lower half of its eye;
- a white and gray chinchilla with yellow thick pus-like discharge exuding from its right eye;
- a grey chinchilla with a markedly swollen and closed left eye with thick yellow and brown discharge crusted into the fur around the eye;
- a light grey chinchilla that was hypersalivating and had generalized matted fur from its neck to its tail, *see* photo below; and
- a grey chinchilla with discolored clumps of matted fur on its mid-back and hind-end.

*Id.* at 14-24. APHIS officials instructed Mr. Ritterspach to seek veterinary care for these additional animals no later than 5:00pm on August 8, 2026. *Id.* at 1; *see* 9 C.F.R. § 2.40(b)(2).



Ex. 22 at 21.

90. During an inspection four days later on August 11, 2026, APHIS inspectors found

that Mr. Ritterspach, again, did not have the seven identified animals evaluated by a veterinarian by the established deadline, and that the attending veterinarian did not evaluate these animals until around 11:45am on August 10, 2026. Ex. 2 at 1. APHIS inspectors again identified six additional animals requiring veterinary care:

- A gray chinchilla with both eyes swollen and matted shut, with brown/yellow crusting discharge exuding from its eyes and matting into the fur, as well as discharge on the animal's face near both cheeks;
- three chinchillas with severe, generalized matting on their hind ends;
- one chinchilla with excessive stringy lumps of matted fur on the back and underside of its body; and
- one chinchilla with large thick clumps of matted fur on its back and hind end.

*Id.* at 1, 5-10, 27-28. APHIS officials instructed Mr. Ritterspach to seek veterinary care for these animals no later than 5:00pm on August 12, 2026. *Id.* at 1; *see* 9 C.F.R. § 2.40(b)(2).

## III. Defendants Have Violated the AWA and Its Regulations and Standards and Placed the Health of AWA-Regulated Animals at R & R Chinchilla's Facility in "Serious Danger" by Exposing Them to Unsanitary, Unsafe, and Inhospitable Housing Conditions.

91. Defendants have violated the AWA and placed the animals at its facility in "serious danger," by allowing animals to be housed in enclosures that are unsanitary, damaged or broken, contain sharp edges, lack access to potable food or water, or are otherwise unsafe for the contained animal.

### A. Unsanitary Primary Enclosures

92. Defendants have violated the AWA and its regulations and standards by providing enclosures for animals that are unsanitary, exposing the animals to dirty, unsafe conditions that could cause injury, illness, or disease. *See* 9 C.F.R. §§ 3.125(d), 3.126(b); *id.* § 3.131(a), (c), (d).

93. During the September 13, 2022 inspection, APHIS inspectors observed that at least 50% of the enclosures had a thick buildup of dust, hair and debris, and that 60% of the unused enclosures had so many dirty shavings, clumps of fur, and spiderwebs that the inspectors could not see through the wires. In one of the rooms, there were nine stacks of breeding cages on a wooden bench that had dirty shavings piled six inches high between each of the stacks. Ex. 3 at 2; *see* 9 C.F.R. § 3.131(c). Additionally, the facility had a large number of small, black, flying insects throughout that congregated in wet bedding and food. Ex. 3 at 2, 12-13; *see* 9 C.F.R. § 3.131(d). Inspectors also saw two cages housing chinchillas that allowed waste and other debris to fall into the four occupied cages below, which had a buildup of dirty bedding. Ex. 3 at 1, 6-11; *see* 9 C.F.R. § 3.125(d).

94. When APHIS inspectors returned to the facility to inspect on January 23, 2023, they again observed a thick buildup of dust, hair, and debris on the top and sides of at least 40% of the enclosures. Three of the rooms also had an accumulation of dust and cobwebs on the walls, windowsills, and vents. Ex. 4 at 1, 4-6; *see* 9 C.F.R. § 3.131(c).

95. At the next inspection on October 25, 2023, APHIS inspectors again saw a thick buildup of dust, hair, and debris on the top and sides of at least 60% of the enclosures, as well as an accumulation of dust and cobwebs on the walls, windowsills, and vents of the facility's rooms. Ex. 6 at 2, 8-9; *see* 9 C.F.R. § 3.131(c). When inspectors returned approximately two weeks later, at least 30% of the enclosures still had a thick buildup of dust, hair, and debris, and the rooms continued to have an accumulation of dust and cobwebs. Ex. 7 at 1, 3-4; *see* 9 C.F.R. § 3.131(c).

96. During the inspection on June 12, 2024, APHIS inspectors again saw a thick buildup of dust hair and debris on the top and sides of at least 30% of the enclosures, and dust and cobwebs on the walls, windowsills, and vents of the rooms. Ex. 8 at 1, 3-4; *see* 9 C.F.R. § 3.131(c).

97. At the September 10, 2025 inspection, approximately 70% of the enclosures had a thick buildup of dust, hair, and debris, and more than 60% of the unoccupied enclosures had so many dirty shavings, clumps of fur, and spiderwebs that the inspectors had difficulty seeing through the wires. Ex. 11 at 1, 4-5; *see* 9 C.F.R. § 3.131(c). The smell of ammonia was so strong that it irritated the inspectors' eyes. And bags of soiled bedding had been left in the aisles of the animal housing area. *Id.* at 1; *see* 9 C.F.R. § 3.126(b).

98. When APHIS inspectors next gained access to the facility on January 21, 2026, they observed that the enclosures were in conditions similar to what inspectors had seen four months prior. Ex. 14 at 2, 5-6, 8; *see* 9 C.F.R. § 3.131(c). Additionally, there was a thick buildup of wet material and excreta on the bottom of the chinchillas' nest boxes and dust baths. Ex. 14 at 1-2, 4; *see* 9 C.F.R. § 3.131(a).

99. During the June 9, 2026 inspection, APHIS inspectors noticed a strong smell of ammonia that irritated their eyes upon entering the facility before seeing 58 enclosures housing 70 chinchillas that had excessive fecal material covering the entire floor with minimal to no clean bedding. Ex. 18 at 2, 6; Ex. 19 at 1. Several of the enclosures had no dry space for the animals to lie down, and at least one animal had wet fur on its underside. The animals had to walk through fecal material and wet bedding to access food and water. Ex. 18 at 2, 5-6. Defendants represented that the area had not been cleaned in at least two weeks. They also stated that the different rooms are cleaned every one to two weeks. Ex. 19 at 1. APHIS inspectors observed discarded bedding and fecal material on the floors between rows of enclosures throughout the building. *Id.* at 1-2, 4, 9. Enclosures with pull-out trays for catching animal droppings were excessively full of feces, urine, bedding, and food, and were swarming with flies. *Id.* at 5-6; Ex. 18 at 5. Multiple enclosures had clumps of hair from the animals trapped in the wire fencing, and hair was also seen on the

automatic watering lines. Ex. 19 at 2, 5-7; *see* 9 C.F.R. §§ 3.126(b), 3.131(a), (c), (d).

100. When APHIS inspectors returned to R & R Chinchilla's facility to inspect several weeks later, they again observed discarded bedding and fecal material on the floors between rows of enclosures throughout the building, numerous cobwebs, clumps of hair on enclosures, and hair on the automatic watering lines. Ex. 20 at 1, 3-9; *see* 9 C.F.R. § 3.131(c).

101. During the August 5, 2026 inspection, APHIS inspectors were informed of and inspected the second building. The inspectors experienced a strong smell of ammonia that irritated their eyes. Ex. 21 at 1-2; *see* 9 C.F.R. § 3.126(b). The previously undisclosed building had approximately 1,500 enclosures housing around 805 chinchillas, which had excessive buildup of fecal material across entire floors of the enclosures with minimal to no clean bedding. The animals had to walk through the fecal material to gain access to their food and water. Ex. 1 at 3, 33, 35-36; *see* 9 C.F.R. § 3.131(a). Additionally, APHIS inspectors observed multiple empty enclosures with open packets of rat poison in or adjacent to occupied enclosures, including an unoccupied enclosure with rat poison located above an enclosure with a dead chinchilla lying on its side. Ex. 21 at 2, 5, 11; *see* 9 C.F.R. § 3.131(d). APHIS inspectors also saw excessive discarded bedding and fecal material on the floors between the rows of animal enclosures, enclosures with clumps of hair in the wire fencing of the enclosures, enclosures with cobwebs catching debris, and hair caught on the automatic watering lines. Ex. 21 at 5, 7-8, 12-14; *see* 9 C.F.R. § 3.131(c). Spaces without animals had an accumulation of trash, dust, debris, soiled animal bedding, cobwebs, and equipment. Ex. 21 at 2, 6, 18; *see* 9 C.F.R. § 3.131(c); *see also* photo below.



Ex. 21 at 14.

102. When APHIS inspectors returned to inspect the previously undisclosed building on August 7, 2026, they experienced a scent of ammonia so strong that it irritated their eyes and chests, and caused one inspector to leave the building. The building had no appreciable air flow, and numerous animals were experiencing severe ocular and respiratory issues. Ex. 22 at 3; *see* 9 C.F.R. § 3.126(b). There continued to be an excess of discarded bedding and fecal material on the floors between rows of animal enclosures, clumps of hair on enclosures and automatic watering lines, and an accumulation of trash, dust, debris, soiled animal bedding, equipment, and miscellaneous items in building spaces not used to house animals. Ex. 22 at 3, 10; *see* 9 C.F.R. § 3.216(b). Most ceiling panels had areas with severe accumulations of dark brown, black, and white staining. *Id.* at 3-4, 35, 28-30; *see* 9 C.F.R. § 3.131(c). Inspectors also saw an excessive number of cobwebs catching debris and spiders on the enclosures in close proximity to the animals, as well

as open packets of rat poison near or adjacent to occupied enclosures. *Id.* at 3-4, 6-7, 26-27; *see* 9 C.F.R. §§ 3.131(c), (d); *see* photo below.



Ex. 22 at 27.

103. During the August 11, 2026 inspection, APHIS inspectors again experienced a strong odor of ammonia in the second previously undisclosed building and observed numerous animals in the building experiencing severe ocular and respiratory issues. Ex. 2 at 2; *see* 9 C.F.R. § 3.126(b). APHIS inspectors also observed a chinchilla in an enclosure with an excessive buildup of fecal material covering the entire floor of the enclosure with minimal to no clean bedding. Ex. 2 at 2-3, 24; *see* 9 C.F.R. § 3.131(a). There continued to be an excess of discarded bedding and fecal material on the floors between rows of animal enclosures, clumps of hair on enclosures and automatic watering lines, and an accumulation of trash, dust, debris, soiled animal bedding, equipment, and miscellaneous items. Ex. 2 at 3, 13, 29; *see* 9 C.F.R. § 3.131(b), (c). And most of the ceiling panels continued to have areas with severe accumulations of dark brown, black, and white staining. Ex. 2 at 3, 13, 20-21, 29, 31; *see* 9 C.F.R. § 3.131(d). Inspectors also again saw an

excessive number of cobwebs catching debris and spiders on the enclosures in close proximity to the animals. Ex. 2 at 3, 13, 25-26, 29; *see* 9 C.F.R. § 3.131(c), (d); *see* photo below.



Ex. 2 at 29.

**B. Unsafe Primary Enclosures**

104. Defendants have violated the AWA and its regulations and standards by providing enclosures for animals that are damaged and unsecure, exposing the animals to unsafe conditions that could cause injury or illness. *See* 9 C.F.R. § 3.125(a).

105. During the September 13, 2022 inspection, APHIS inspectors observed a breeding pen with a broken section of sharp wire that protruded into the enclosure and was large enough to allow the chinchillas it housed to escape. Ex. 3 at 1, 4-5; *see* 9 C.F.R. § 3.125(a).

106. At the October 25, 2023 inspection, APHIS inspectors saw a chinchilla that had escaped from its enclosure freely roaming throughout the housing area. Ex. 6 at 1-2, 8; *see* 9 C.F.R. § 3.125(a).

107. During the January 21, 2026 inspection, APHIS inspectors observed another chinchilla that had escaped the day before freely roaming throughout the housing area. Ex. 14 at 1, 8; *see* 9 C.F.R. § 3.125(a). Additionally, Defendants had intentionally cut holes in almost all the wire enclosures to install receptacles to distribute supplements, but the receptacles were no longer being used, leaving four sharp points on the enclosures that the animals could have direct contact with. And around 80% of the enclosures had rust and corrosion near the water receptacles. Ex. 14 at 1, 6-7; *see* 9 C.F.R. § 3.125(a).

108. During the August 5, 2026 inspection, once APHIS inspectors gained access to the previously undisclosed second building, they observed multiple enclosures with sharp points accessible to the animals, as well as rust and corrosion creating sharp points and jagged edges on dust baths, enclosure fronts, and food and water receptacles. Ex. 21 at 1, 9-10, 15-16, 19; *see* 9 C.F.R. § 3.125(a).

109. Upon returning to Defendants' facility on August 7, 2026, APHIS inspectors saw a section of the previously undisclosed building's ceiling caving in onto a row of occupied enclosures. Ex. 22 at 3, 29-30; *see* 9 C.F.R. § 3.125(a). They also observed jagged edges in the metal feeders and dust baths of most enclosures, as well as sharp points on the enclosures' wiring and at least one litter pan that had rusted through to create sharp, jagged edges. Ex. 22 at 2-3, 9; *see* 9 C.F.R. § 3.125(a).

110. During the August 11, 2026 inspection, APHIS inspectors again observed the previously undisclosed building's ceiling caving in onto a row of occupied enclosures, jagged edges in the metal feeders and dust baths of most enclosures, and sharp points on the enclosures' wiring. Ex. 2 at 2, 11-12, 14-17, 22-23, 31; *see* 9 C.F.R. § 3.125(a).

### C. Lack of Sufficient Food and Water

111. Additionally, Defendants have violated the AWA and its regulations and standards and placed animals in "serious danger" by failing to ensure they have adequate access to food and water. *See* 9 C.F.R. §§ 3.129(a), 3.130.

112. During the October 25, 2023 inspection, APHIS inspectors observed approximately 24 chinchilla enclosures without water available. When provided with water, half of the animals immediately drank. One adult and two un-weaned offspring drank voraciously for approximately four minutes. Ex. 5 at 1; *see* 9 C.F.R. § 3.130.

113. During the January 22, 2025 inspection, APHIS inspectors observed water bottles for five chinchilla enclosures with a green substance on the interior and cloudy water with green and brown debris floating throughout it. Ex. 14 at 1; *see* 9 C.F.R. § 3.130. When APHIS inspectors returned around twelve days later, these conditions were observed in the water bottles for seven chinchillas. Ex. 15 at 1; *see* 9 C.F.R. § 3.130.

114. During the June 9, 2026 inspection, APHIS inspectors observed food in two enclosures that had become dry and also had a white, dusty material. Ex. 19 at 1, 11; *see* 9 C.F.R. § 3.129(a).

## IV. Defendants Have Violated the AWA and Its Regulations by Repeatedly Failing to Maintain Complete and Accurate Records.

115. Defendants have violated the AWA and its regulations by failing to maintain complete and accurate records of the animals at its facility both before and after APHIS's discovery of the second building housing animals at the property. Defendant R & R Chinchilla was cited four times for failing to maintain a record of current animals at the facility before the August 5, 2026 inspection. After each of these citations, APHIS inspectors instructed Mr. Ritterspach on how to comply with this requirement. Instead, Mr. Ritterspach not only repeatedly failed to keep an

accurate record of animals on hand at the building APHIS inspectors knew of prior to August 5, 2026, but also kept no records of the animals in the previously undisclosed second building in an attempt to cover up its operations there. Defendants' failure to make and maintain accurate and complete records continues. *See* 9 C.F.R. § 2.75(b)(1).

116. During the January 23, 2023 inspection, APHIS inspectors observed that Defendants did not maintain records of the current animals at the facility and did not have disposition records for animals that were recently sold. Ex. 4 at 1; *see* 9 C.F.R. § 2.75(b)(1).

117. At the next inspection on October 25, 2023, APHIS inspectors again cited R & R Chinchilla for not maintaining records of the current animals at the facility. Ex. 6 at 1; *see* 9 C.F.R. § 2.75(b)(1).

118. During the February 25, 2026 inspection, APHIS inspectors again observed that Defendants did not have a current record of animals at the facility. Ex. 17 at 1; *see* 9 C.F.R. § 2.75(b)(1). Defendants still did not have a current record of animals on hand during the June 9, 2026 inspection, or records of animals that had been born or euthanized since the last inspection. Ex. 19 at 1; *see* 9 C.F.R. § 2.75(b)(1).

119. During the August 5, 2026 inspection, APHIS inspectors observed that Defendants did not have records for any of the approximately 805 animals in the second, previously undisclosed building or acquisition records for the animals in that building. Ex. 21 at 1; *see* 9 C.F.R. § 2.75(b)(1).

120. During the August 7, 2026 inspection, APHIS inspectors saw that Defendants had again failed to put together an accurate record of animals on hand that included the animals in the second, previously undisclosed building. Mr. Ritterspach also stated that the animals are bred and then sold online, but could not provide any disposition records for these sales or acquisition records

for the litters of animals being bred in the second, previously undisclosed building. Ex. 22 at 2, 11; *see* 9 C.F.R. § 2.75(b)(1).

121. When APHIS inspectors conducted an inspection on August 11, 2026, they again observed that Defendants did not have an accurate record of all regulated animals on its premises, including for the approximately 800 chinchillas housed in the second building. Ex. 2 at 1-2, 30; *see* 9 C.F.R. § 2.75(b)(1).

122. Accurate recordkeeping is essential for APHIS to be able to track animal movements and ensure the well-being of animals. Defendants intentionally failed to maintain legally required records of R & R Chinchilla's animals.

## CLAIMS FOR RELIEF

### <u>Claim 1</u>

### Defendants' ongoing practices have placed the health of animals in serious danger in violation of 7 U.S.C. § 2159 and will continue to place the health of animals in serious danger in the imminent future.

123. The United States incorporates by reference all allegations of the Complaint.

124. Defendants are placing the health of the animals at R & R Chinchilla's facility in serious danger in violation of the AWA and its regulations and standards. 7 U.S.C. § 2159(a).

125. Defendant R & R Chinchilla is a dealer under the AWA because it is a person who, in commerce, for compensation or profit, delivers for transportation, transports, buys, or sells, or negotiates the purchase or sale of animals for teaching, exhibition, or use as a pet. 7 U.S.C. § 2132(f); 9 C.F.R. § 1.1 (definition of a "dealer").

126. Defendants are placing the health of the animals present at R & R Chinchilla's facility in serious danger by failing to provide enough adequately trained employees to appropriately care for the number of animals at the facility and by having more animals than allowed under R & R Chinchilla's AWA class "B" license in violation of 9 C.F.R. §§ 2.1(b)(2)(i),

2.131(b)(1), 3.132, and 3.133.

127. Defendants are placing the health of the animals present at R & R Chinchilla's facility in serious danger by failing to provide adequate veterinary care or to conduct the required daily observations of all animals to assess their health and well-being in violation of 9 C.F.R. § 2.40(b). Defendants have not fulfilled their obligation to ensure adequate veterinary care to all animals present at the facility. These violations have caused animals to suffer.

128. Defendants are placing the health of the animals present at R & R Chinchilla's facility in serious danger by failing to provide them with safe and hospitable housing conditions in violation of 9 C.F.R. §§ 3.125(a), (d), 3.126(b), 3.129(a), 3.130, 3.131(a), (c), (d). These violations have caused animals injury, stress, discomfort, and suffering.

129. Unless enjoined, Defendants will continue to place the health of animals present at R & R Chinchilla's facility in serious danger in violation of the AWA and its regulations and standards.

130. The United States is entitled to an injunction to prevent and restrain Defendants from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2159(b).

**Claim 2**

**Defendants have failed to provide an adequate number of employees to appropriately care for the number of animals at Defendants' facility and have more animals than allowed under R & R Chinchilla's AWA license in violation of 7 U.S.C. § 2143(a)(1), (2)(A) and 9 C.F.R. §§ 2.1(b)(2)(i), 2.131(b)(1), 3.132, 3.133.**

131. The United States incorporates by reference all allegations of the Complaint.

132. Defendants are violating the AWA and its implementing regulations and standards by failing to provide an adequate number of employees to appropriately care for the number of animals at R & R Chinchilla's facility and by having more animals than allowed under R & R

Chinchilla's AWA class "B" license in violation of 7 U.S.C. § 2143(a)(1), (2)(A) and 9 C.F.R. §§ 2.1(b)(2)(i), 2.131(b)(1), 3.132, and 3.133.

133. Unless enjoined, Defendants will continue to violate the AWA, and its regulations and standards, causing needless suffering to, or even the death of, animals at R & R Chinchilla's facility.

134. The United States is entitled to an injunction to prevent and restrain Defendants from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2146(c).

## Claim 3

**Defendants have failed to provide adequate veterinary care in violation of 7 U.S.C. § 2143(a)(1), (2)(A) and 9 C.F.R. § 2.40(b)(2), (3).**

135. The United States incorporates by reference all allegations of the Complaint.

136. Defendants are violating the AWA and its implementing regulations by failing to provide animals present at R & R Chinchilla's facility with adequate veterinary care in violation of 7 U.S.C. § 2143(a)(1), (2)(A) and 9 C.F.R. § 2.40(b)(2), (3).

137. Unless enjoined, Defendants will continue to violate the AWA, and its regulations, causing needless suffering to, or even the death of, animals at R & R Chinchilla's facility.

138. The United States is entitled to an injunction to prevent and restrain Defendants from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2146(c).

## Claim 4

**Defendants have failed to provide safe, sanitary, and hospitable housing conditions in violation of 7 U.S.C. § 2143(a)(1), (2)(A) and 9 C.F.R. §§ 3.125(a), (d), 3.126(b), 3.129(a), 3.130, 3.131(a), (c), (d).**

139. The United States incorporates by reference all allegations of the Complaint.

140. Defendants are violating the AWA and its implementing regulations and standards by failing to provide animals present at R & R Chinchilla's facility with safe and hospitable housing conditions in violation of 7 U.S.C. § 2143(a)(1), (a)(2)(A) and 9 C.F.R. §§ 3.125(a), (d), 3.126(b), 3.129(a), 3.130, 3.131(a), (c), (d).

141. Unless enjoined, Defendants will continue to violate the AWA, and its regulations and standards, causing needless suffering to, or even the death of, animals at R & R Chinchilla's facility.

142. The United States is entitled to an injunction to prevent and restrain Defendants from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2146(c).

## Claim 5

**Defendants have failed to create and maintain complete and accurate records in violation of 7 U.S.C. § 2140 and 9 C.F.R. § 2.75(b)(1).**

143. The United States incorporates by reference all allegations of the Complaint.

144. Defendants are violating the AWA, and its implementing regulations, by failing to create and maintain complete and accurate records in violation of 7 U.S.C. § 2140 and 9 C.F.R. § 2.75(b)(1).

145. The United States is entitled to an injunction to prevent and restrain Defendants from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2146(c).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that Defendants have placed and are likely to imminently place the health of animals at R & R Chinchilla's facility in serious danger in violation of the AWA and its regulations and standards, 7 U.S.C. § 2159;

2. Declare that Defendants have violated and continue to violate the AWA, 7 U.S.C. §§ 2140, and 2143(a)(1), (2), and its implementing regulations and standards;

3. Preliminarily enjoin and restrain Defendants from violating the AWA by placing the health of animals at R & R Chinchilla's facility in serious danger, 7 U.S.C. § 2159;

4. Preliminarily and permanently enjoin and restrain Defendants from violating the AWA and its implementing regulations and standards, 7 U.S.C. § 2146(c); and

5. Grant other relief that the Court deems just and proper.

DATED: August 20, 2026

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

*/s/ Guillermo J. Rojas*
Guillermo J. Rojas
Assistant United States Attorney
Registration No. 0069882
Four Seagate, Suite 308
Toledo, OH 43604-2624
Phone: 419-259-6376
Fax: 419-259-6360

Guillermo.Rojas@usdoj.gov

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division

*/s/ Kamela A. Caschette*
KAMELA A. CASCHETTE
Senior Trial Attorney (NY Bar No. 5679188)
BONNIE M. BALLARD
Trial Attorney (MD Bar No. 2211280027)
DAVIS A. BACKER
Senior Trial Attorney (CO Bar No. 53502)
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
kamela.caschette@usdoj.gov
bonnie.m.ballard@usdoj.gov
davis.backer@usdoj.gov
Phone: (202) 598-7868 (Caschette)
(202) 532-5567 (Ballard)
(202) 305-5469 (Backer)
Fax: (202) 305-0275

*Attorneys for the United States of America*

# EXHIBIT LIST

Ex. 1: August 5, 2026 Routine Inspection Report

Ex. 2: August 11, 2026 Inspection Report

Ex. 3: September 13, 2022 Inspection Report

Ex. 4: January 23, 2023 Inspection Report

Ex. 5: October 25, 2023 Routine Inspection Report

Ex. 6: October 25, 2023 Focused Inspection Report

Ex. 7: November 7, 2023 Inspection Report

Ex. 8: June 12, 2024 Inspection Report

Ex. 9: March 6, 2025 Inspection Report

Ex. 10: September 10, 2025 Routine Inspection Report

Ex. 11: September 10, 2025 Focused Inspection Report

Ex. 12: September 22, 2025 Inspection Report

Ex. 13: November 17, 2025 Inspection Report

Ex. 14: January 21, 2026 Inspection Report

Ex. 15: February 3, 2026 Inspection Report

Ex. 16: February 9, 2026 Inspection Report

Ex. 17: February 25, 2026 Inspection Report

Ex. 18: June 9, 2026 Routine Inspection Report

Ex. 19: June 9, 2026 Focused Inspection Report

Ex. 20: June 23, 2026 Inspection Report

Ex. 21: August 5, 2026 Focused Inspection Report

Ex. 22: August 7, 2026 Inspection Report